UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:99CV-P91-H

DAVID EUGENE MATTHEWS                                                                          PETITIONER

V.

THOMAS L. SIMPSON, WARDEN                                                                      RESPONDENT

**MEMORANDUM OPINION**

In October, 1982, the Commonwealth of Kentucky (the "Commonwealth") opened its case in Jefferson Circuit Court against Petitioner David Matthews on charges of murder and burglary. The jury eventually convicted Matthews on both charges and on November 17, 1982, the trial court imposed the death sentence. Though much has transpired in the succeeding twenty-six plus years, the Court must now decide whether Matthews' trial, conviction, and sentence on the murder charge passes constitutional muster or whether Matthews is entitled to a writ of habeas corpus.[1]

---

[1] On appeal from the trial court, the Kentucky Supreme Court affirmed Matthew's conviction and sentence. *Matthews v. Commonwealth*, 709 S.W.2d 414 (KY. 1985), *cert denied* 479 U.S. 871 (1986). Then, on December 9, 1986, Matthews filed his motion to vacate judgment pursuant to Rule 11.42 of the Kentucky Rules of Criminal Procedure ("RCr 11.42"). After a series of events in state court, the Kentucky Supreme Court denied Matthews RCr11.42 motion. *Matthews v. Commonwealth*, Case No. 96-SC-805-MR (Ky. Nov. 20, 1997), *cert denied* 525 U.S.860 (1998). Matthews filed his federal habeas petition in the spring of 1999. In August of that year, he filed a motion for discovery related to records concerning his mental health treatment while incarcerated in the Jefferson County Jail. He also filed a motion for an evidentiary hearing on four issues, including ineffective assistance of appellate counsel. The Court conducted a hearing only on the ineffective assistance of appellate counsel issue in July of 2000. On April 20, 2000, however, Matthews filed another RCr 11.42 motion in Jefferson Circuit Court. This motion asserted new claims. On August 1, 2001, the Court dismissed Matthews habeas petition without prejudice for failure to exhaust his state claims, but later issued a certificate of appealability in light of *Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002). Matthews appealed to the Sixth Circuit which remanded to this court for further consideration in light of *Palmer*. In the interim, the Kentucky Supreme Court denied Matthews' RCr 11.42 motion. Thus, upon remand, Matthews had exhausted all of his state claims. The Court conducted another set of

Since the petition was filed here, parties have engaged in every manner of discovery, motion practice and appeals. The Magistrate Judge devoted considerable time and effort to this matter. He thoroughly and dispassionately analyzed the issues raised. The Court appreciates his effort and guidance. He has issued Findings of Fact and Conclusions of Law, recommending that Matthews' petition for writ of habeas corpus be denied in all respects, except for two. He recommended granting the writ as to (1) the trial court's failure to grant a directed verdict on the murder counts because the Commonwealth did not present evidence of the absence of extreme emotional disturbance ("EED") as required by the then applicable Kentucky law; and (2) ineffective assistance of appellate counsel because that counsel failed to argue that the term "extreme emotional disturbance" should have been, but was not, defined in the jury instructions in either the guilt or penalty phases of Matthews' trial. As a consequence, he recommended vacating Matthews' death sentence and his convictions for the murders of Marlene Matthews and Magdalene Cruse.

Each side has now filed lengthy objections and responses, which in all substantial respects repeat arguments that the Magistrate had considered. Petitioner identified four major objections to the Magistrate's report while Respondent identified two. It is not necessary to restate the analysis in those instances where the Court substantially agrees with the Magistrate's analysis and completely with his result. The Court approaches these issues without partisanship on the death penalty debate. On the two issues where the Magistrate Judge recommended granting the writ, however, this Court has arrived at a different view.

The Court does not pretend to offer the last word, only to explain as clearly as possible

---

evidentiary hearings in March and July of 2006. After these hearings, the parties submitted post-hearing memoranda, which have led to this opinion.

its reasons for denying the writ. What is required constitutionally are fair procedures and evidence sufficient to warrant the trial court's sanction. For the reasons that follow, the Court believes that, irrespective of one's views of the underlying sanction, the Kentucky courts have met these basic requirements of constitutional fairness and justice.

I.

The Court can resolve Petitioner's objections in a relatively straightforward manner. In order to qualify for habeas relief, Petitioner's claims must meet the requirements of the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. *See Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003) (holding that petitions filed after the effective date of AEDPA, such as the petition here, are reviewed under AEDPA). As the Magistrate correctly pointed out, under the AEDPA, Matthews is only eligible for habeas relief based on claims adjudicated in state court if the adjudication of his claims in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United states" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Petitioner says that trial counsel was ineffective in his investigation, preparation and presentation of the penalty phase evidence. The Magistrate carefully considered each of these issues. The Court cannot find that Petitioner's response has either exposed any mistakes in that analysis or has raised any new issues that the Magistrate has not already considered. The Court will adopt the Magistrate's report and recommendation on this issue.

Petitioner says that the Commonwealth denigrated his EED defense to the extent that it

denied him due process. The Magistrate considered this issue and explained the significant differences between the conduct that might constitute such a denial of due process as in *Gall v. Parker*, 231 F.3d 265 (6th Cir. 2000) ("*Gall II*"), and that here. Petitioner has not raised any issues not already considered. This Court agrees with the Magistrate's analysis and will adopt his report and recommendation on this issue.

Petitioner objects to the finding that the exclusion of certain additional EED evidence was not a violation of his rights under the Sixth, Eighth and Fourteenth Amendments. Once again, the Court finds no grounds for differing with the Magistrate's analysis. Moreover, the Court does not perceive any claim under the Eighth Amendment and does not see that Petitioner has raised any new issues which the Magistrate has not already considered. The Court will adopt the Magistrate's report and recommendation on this issue.

Finally, Petitioner reiterates his argument that Kentucky's murder statute is unconstitutionally vague because neither the statute nor the judge's instructions sufficiently define EED. This is a purely legal issue with which the Magistrate has dealt correctly. Petitioner's objections raise no new issues not already thoroughly considered. The Court will adopt the Magistrate's report and recommendation on this issue as well.

II.

The Magistrate concluded that because the Commonwealth failed to offer direct evidence of EED in its own case, existing Kentucky law required the trial court to sustain Petitioner's motion for directed verdict of acquittal.[2] This is a difficult issue mostly because the

---

[2] It is not precisely clear whether Petitioner would require a directed verdict at the close of the Commonwealth's case in chief or at the conclusion of all the evidence. In either event this Court's analysis reaches the same result.

constitutional and procedural issues have become so confused. This Court concludes that the failure to grant acquittal of the murder charges at the close of the Commonwealth's case does not constitute a violation of Petitioner's federal due process rights. Moreover, the evidence presented in the entire case was sufficient for a reasonable jury to have concluded beyond a reasonable doubt that EED was absent from these circumstances. This evidentiary conclusion is consistent with the jury's actual finding some twenty-seven years ago and the subsequent review of the Kentucky Supreme Court.

The challenge here is to analyze constitutional principles in light of procedural reality. To adequately understand Petitioner's claims regarding the absence of EED, the Court discusses three foundational points. Subsection A examines the role of EED in the Kentucky murder statute at the time of Petitioner's trial; Subsection B examines the state law requirements for persuasion and production of EED evidence; and Subsection C examines the procedural context in which the trial evidence must be presented and its sufficiency evaluated. Except for perhaps the last issue this Court and the Magistrate Judge are in general agreement.

### A.

In 1975, Kentucky revised its penal code, adopting a murder definition derived from the Model Penal Code. The new statutory definition stated, that a person is guilty of murder when:

> With intent to cause the death of another person, he causes the death of such person or of a third person; *except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance* for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. However, nothing contained in this section shall constitute a defense to a prosecution for or preclude a conviction of manslaughter in the first degree or any other crime

Ky. Rev. Stat. § 507.020(1)(a) (emphasis added). This language departed from the common law concept of mitigation, where the killing was committed in the sudden "heat of passion" upon "provocation," and instead adopted EED as a mitigating factor in homicide trials. *See generally Gall v. Commonwealth*, 607 S.W.2d 97, 108 (Ky. 1980) ("*Gall I*") (tracing the history of Kentucky's murder statute). This statutory revision set in motion decades of confusion that would ultimately ensnare the Commonwealth's prosecution of David Matthews.

Between 1978 and 1985, the Supreme Court of Kentucky decided a number of death penalty cases concerning the role of EED under the new Kentucky statute. During this time, the court emphatically characterized the absence of EED as an element of the crime of murder. As it said, " the statute makes the [a]bsence of 'extreme emotional disturbance' an essential element of the offense of murder." *Bartrug v. Commonwealth*, 568 S.W.2d 925, 926 (Ky. 1978); *see also Edmonds v. Commonwealth*, 586 S.W.2d 24, 27 (Ky. 1979) ("A failure to act under the influence of extreme emotional disturbance is an element of the offense of murder."); *Henley v. Commonwealth*, 621 S.W.2d 906, 908 (Ky. 1981) ("The absence of 'extreme emotional disturbance' is an essential element of the offense of murder . . . .") (citing *Bartrug*, 568 S.W.2d at 926).

In 1985, the Kentucky Supreme Court changed its view and said that the absence of EED should not be an actual element of the crime of murder. *Wellman v. Commonwealth*, 694 S.W.2d 696 (Ky. 1985). It wrote:

> We are continually beset with arguments founded upon "extreme emotional disturbance" despite the articulation of its meaning and impact in *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 108-109 (1980). It is our opinion that the principal cause of this problem is the failure of this court, in *Gall*, to specifically overrule those portions of *Ratliff*, *Bartrug* and *Edmonds*, *supra*, which declare

> that the absence of extreme emotional distress is an essential element of the crime of murder and require the Commonwealth to prove such absence, even in those cases where there is no evidence whatever indicating emotional disturbance. To the extent that such cases declare absence of extreme emotional distress to be an element of the crime of murder, they are expressly overruled.
>
> The presence or absence of extreme emotional distress is a matter of evidence, not an element of the crime. They are a matter of the circumstances of each homicide, and there is certainly no obligation to prove the absence of something which was never there.

*Id.* at 697 (emphasis in original). As a matter of constitutional law, the Kentucky Supreme Court acted well within its prerogative to change state law procedures. One must understand the practical and procedural consequences of this doctrinal change from a trial prospective. Only then may one understand whether Kentucky courts impermissibly reviewed the Matthews trial under the post-1985 law. It is not always easy to keep those concepts separated.

The Court is not the first tasked explaining the role of EED in early 1980's murder cases. In the year 2000, the Sixth Circuit examined the law of EED closely in another habeas case. *See Gall II*, 231 F.3d at 288-90. It found that the absence of EED was an element of murder after the 1980 *Gall I* state court decision and remained so until the *Wellman* decision in 1985. *Id*. The analysis in *Gall II* is sound and this Court should follow it. Knowing that the absence of EED is an element of the crime of murder, and understanding how a trial court should evaluate the evidence of it, are two different matters. The next section explains this.

B.

Kentucky law establishes the who, what, when and how of producing and evaluating trial evidence regarding EED. Two related propositions were undeniably clear at the time of the Matthews trial and sentencing in 1982. First, the burden of persuasion as to the absence of EED

lies with the Commonwealth. Second, the burden of production as to the absence of EED lies on the defendant. These two propositions are entirely consistent with the absence of EED as an element of murder in Kentucky.

Beginning in 1978, the Supreme Court of Kentucky specified that the burden of persuasion lay with the Commonwealth. *See Ratliff v. Commonwealth*, 567 S.W.2d 307, 309 (Ky. 1978) ("In the case presently before us, the prosecution carried the burden to satisfy the jury of the absence of extreme emotional disturbance as statutorily defined."); *Bartrug v. Commonwealth*, 568 S.W.2d at 926 ("The legislature clearly intended the prosecution to bear the risk of non-persuasion on the element of mitigation.") (citing *Ratliff*, 567 S.W.2d 307 (Ky. 1978)); *Gall I,* 607 S.W.2d at 109, fn. 5 ("On all of these issues, when raised by the evidence, the Commonwealth has the burden of proof beyond a reasonable doubt."); *Henly v. Commonwealth*, 621 S.W.2d at 908 ("The absence of 'extreme emotional disturbance' is an essential element of the offense of murder, and the legislature intended the Commonwealth to bear the risk of nonpersuasion on this element of mitigation.") (citing *Bartrug*, 568 S.W.2d 925 (Ky. 1978)). The Commonwealth's burden of persuasion as to the "absence of EED" flows naturally from its designation as an element of the crime of murder.

While the Commonwealth bears the burden of persuasion, the Supreme Court of Kentucky placed the burden of production upon each defendant. It said so most clearly two years prior to Matthews' trial:

> That is not to say that once the issue [of the absence of EED] is raised (by evidence sufficient to ground a reasonable doubt) the Commonwealth must meet it with countervailing evidence. Unless the evidence raising the issue is of such probative force that otherwise the defendant would be entitled as a matter of law to an acquittal on the higher charge (murder), *the prosecution is not required to come forth with negating evidence in*

8

> *order to sustain its burden of proof. Cf. Brown v. Commonwealth*, Ky., 555 S.W.2d 252, 257, fn. 6 (1977).

*Gall I*, 607 S.W.2d at 109 (emphasis added). This language clarifies that the Commonwealth has no absolute duty to produce evidence as to the absence of EED. As a matter of trial procedure, it must do so only where the defendant has produced evidence suggesting the presence of EED. Given the nature of the element (that is, proving a negative), this procedural construction actually makes considerable sense.

There are practical and constitutional consequences of these two propositions. When all the proof is complete, the Commonwealth must have evidence in the record from which a jury could conclude beyond reasonable doubt as to the absence of EED. Now this Court must determine whether the trial court's procedure for evaluating the Matthews' trial evidence was constitutionally proper.

C.

The Constitution requires that the burden of proof requirements under Kentucky law not infringe any of a defendant's rights. Applying that general concept here, this Court must harmonize *Gall II* and other relevant authority with the particular circumstances in the Matthews trial.

In *Gall II*, the Sixth Circuit took a historical look at Kentucky law and explained what it means to be an element of a crime, and why it matters. *See Gall II*, 231 F.3d 265, 288-290 (6th Cir. 2000). The Supreme Court had said, "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The Sixth Circuit took this to mean that the Commonwealth must prove every element of the crime

9

beyond a reasonable doubt. *See e.g. Gall II*, 231 F.3d at 286. Evaluating all the evidence in Gall's trial, it held that the Commonwealth had not carried its burden to prove the absence of EED at the trial level. *Gall II*, 231 F.3d at 287-88. This particular factual result is not important for our purposes.[3]

The important legal issue here is that the Gall trial court had shifted the burden of proof to the defendant for an element of the crime.[4] The trial court did this by requiring the defendant to produce evidence that would sustain an acquittal on the murder charge. The Sixth Circuit found that this change in Kentucky law that placed an unconstitutional burden on the defendant Gall. As it said, the *Hankerson* "requirement of 'some evidence' is far less onerous than the high burden of proof Kentucky placed on defendants in *Gall I*." *Gall II*, 231 F.3d at 296.

Petitioner raises a related but different claim here. He says that the trial court violated those safeguards by refusing to grant him a directed verdict. To understand this issue requires understanding the proper court procedures. Because the Sixth Circuit resolved the *Gall* appeal upon the failure of the evidence as a whole, it had no need to consider the precise procedure that a trial court should follow to ensure defendants their constitutional safeguards. This Court will

---

[3]The evidence of EED in *Gall* is much stronger than that in Matthews. Any comparison of the two results is not meaningful for our purposes. As the *Gall II* court said, the evidence produced by the Commonwealth "was so lacking that no rational trier of fact could have found the required elements of the crime beyond a reasonable doubt." *Gall II*, 231 F.3d at 287-88. Unlike the situation in the Gall trial, the Matthews record does contain evidence supporting absence of EED. The important aspect of *Gall II* is its requirement that the trial court properly evaluate all the evidence.

[4]To be clear, it is not unconstitutional for a state to require the defendant produce some evidence in order to raise the issue of EED. *See Hankerson v. North Carolina*, 432 U.S. 233, 237 n. 3 (1977) (holding that it is not unconstitutional for states to require "the criminal defendant to present at least some evidence to raise a factual issue with respect to heat of passion or self-defense."). What is unconstitutional is to require more than "at least some evidence" on the part of the defendant. *Gall II*, 231 F.3d at 296. The Sixth Circuit found the language quoted from *Gall I* above problematic, especially the statement that "[u]nless the evidence raising the issue is of such probative force that otherwise the defendant would be entitled as a matter of law to an acquittal on the higher charge (murder), the prosecution is not required to come forth with negating evidence in order to sustain its burden of proof." *Gall I*, 607 S.W.2d at 109.

now do so.

The proper procedure appears as follows. First, the Commonwealth should make its case in chief, introducing evidence regarding the elements of the crime. At this time, the Commonwealth may, but is not required to, introduce evidence regarding the absence of EED. *See Gall I*, 607 S.W.2d at 109; *Hankerson*, 432 U.S. at 237 n. 3. After the close of the Commonwealth's case, a defendant may put forth a defense if he chooses. In doing so, a defendant may present evidence that at the time of the crime he acted under EED. *See Gall I*, 607 S.W.2d at 109; *Hankerson*, 432 U.S. at 237 n. 3. If a defendant first presents evidence suggesting the presence of EED, the Commonwealth must be able to point to evidence suggesting an absence of EED in order to survive defendant's motion for a directed verdict on the charge of murder. *See Gall II,* 231 F.3d at 298; *Hankerson*, 432 U.S. at 237 n. 3. To do this, the Commonwealth may point either to inferences from evidence elicited from the defendant's witnesses or from its own.

Given this procedure, Matthews was not entitled to a directed verdict on the charge of murder at the close of the Commonwealth's case and it is wrong to suggest that the trial court violated his constitutional rights by failing to so rule at that point in the trial. Rather, a trial court should evaluate the evidence only at the close of all the proof. A defendant is entitled to a directed verdict then if he has introduced evidence suggesting that he acted under the influence of EED and the Commonwealth cannot point to evidence from which a reasonable jury could conclude otherwise beyond a reasonable doubt. Thus, the trial court here followed the proper trial procedures and did not violate Matthews' constitutional protections by denying his motion at the close of the Commonwealth's case.

III.

Now the Court arrives at the point of evaluating whether the evidence at the close of trial required a directed verdict of acquittal on the EED issue. AEDPA permits a grant of habeas relief only where the state court reached a decision, "contrary to, or [that] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In this context, the AEDPA standard permits relief only if the trial court and the Kentucky Supreme Court unreasonably applied the *Winship* standard, i.e. shifted the burden to prove the absence of EED on to Matthews, in denying the motion for acquittal. The trial court and Kentucky Supreme Court both believed that the trial record contained sufficient evidence upon which a reasonable jury could convict Matthews, and thus the motion for acquittal was properly denied. It is upon this issue that this Court differs most clearly from the Magistrate Judge.

In these circumstances, the trial court's denial of the motion for a verdict of acquittal would be contrary to clearly established Federal law only if a reasonable jury could not have found from the evidence the absence of EED. If that were true, then the trial court would have impermissibly shifted the burden onto the defendant to prove the presence of EED when it denied his motion. If, however, a reasonable jury could have concluded from the evidence that the defendant acted in the absence of EED, the trial court properly denied defendant's motion. The question then is whether the evidence as a whole permits the necessary inferences that Matthews acted in the absence of EED.[5]

---

[5]Under AEDPA a federal court shall presume the correctness of the factual findings of a state court, unless the applicant rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here there is no clear and convincing evidence that Matthews was acting under the influence of EED. The Court is not reviewing whether or not Matthews acted under the influence of EED, rather it is merely reviewing whether the trial court

12

A.

The Kentucky Supreme Court has already analyzed the inferences permitted from Matthews' own witnesses or the Commonwealth's questioning of them. It wrote:

> Another of appellant's arguments in connection with the findings of intentional murder is that the evidence was insufficient to prove absence of emotional disturbance.
>
> While it is certainly true that appellant tried hard to make a case for application of the qualifying phrase, "acting under the influence of extreme emotional disturbance" as set out in KRS 507.020(1)(a), by presenting extensive evidence of preexisting serious domestic problems and through the testimony of a psychiatrist, it is equally true that the evidence regarding appellant's conduct before, during and after the crimes was more than sufficient to support the jury's findings of capital murder. It is not necessary for the Commonwealth to produce direct evidence, by confession or otherwise, of absence of extreme emotional disturbance. *See Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 107 (1980).
>
> The proof that appellant was acting under the influence of extreme emotional disturbance was far from overwhelming. In addition to the circumstances of the crime, the proof was that when he returned to his mother's house after the crime, about 6:00 to 6:30 a.m., he took steps to hide the gun and clean his clothes. Shortly thereafter, he gave a false statement to the police.

*Matthews v. Commonwealth*, 709 S.W.2d 414, 420-421 (Ky. 1985). For these reasons, it concluded that the Commonwealth had met its burden of persuasion. This does not conclude this Court's inquiry. Notwithstanding the Kentucky Supreme Court's reasonable analysis, this Court

---

unconstitutionally shifted the burden to prove an element of the crime onto Matthews.

13

must make its own assessment.

B.

The Court will focus on several key areas of the evidence.

A central dispute about the trial evidence concerns the impact of Dr. Chutkow's expert testimony. At trial, he testified that Matthews was affected by EED when he committed the murders. The Commonwealth did not present its own expert witness. However, the absence of an expert for the Commonwealth certainly does not decide this issue. *See Hayes v. Commonwealth*, 625 S.W.2d at 586 (holding that the cross-examination of a defense expert may sufficiently raise a factual issue regarding EED). A jury is free to reject expert testimony. Indeed, EED is not a mental disorder that even requires expert testimony to establish it.[6]

The Commonwealth cross-examined Dr. Chutkow and there is ample reason in the evidence for the jury to have rejected his conclusions. For instance, the jurors heard that Matthews went to great lengths to procure the murder weapon by borrowing money from his girlfriend and falsely claiming that he needed to purchase it for his mother's protection and by arranging for the purchase of the gun from a neighborhood dealer at the dealer's bar. They also heard evidence of Matthews' conversations with his oldest brother. All of this evidence certainly permitted an inference as to Matthews' premeditation and his mind set prior to his upcoming crime, the very anthesis of EED.

The method of committing this crime would suggest to reasonable jurors some quiet contemplation and thought on Matthews' part. After Matthews broke into the house, he spent

---

[6]A mental disorder "may constitute a reasonable 'explanation or excuse'" for the presence of EED. *Gall I*, 607 S.W.2d at 109. The presence or absence of EED may be found regardless of whether the defendant suffers from a mental disorder.

14

several hours before finally finishing his crime spree. After the crimes, he had discussions with his mother that suggest deliberation and understanding of the surrounding events. The same can be said regarding his conversations with authorities after his arrest. Moreover, the absence of EED could be inferred from the careful steps that Matthews took to conceal his crimes during and after their commission. Though this evidence is circumstantial, the Sixth Circuit has said, the jury may examine the evidence of the defendant's conduct and "infer what he thought and what he intended to do from what he did and failed to do - the quintessential jury responsibility in a circumstantial-evidence case." *DeLisle v. Rivers*, 161 F.3d 370, 389 (6th Cir. 1998).

The evidence presents an even more precise evidentiary question. Did the jury have evidence from which to infer the absence of EED at the time of the crime? The Commonwealth and defense presented evidence regarding Petitioner's conduct before, during, and after the crime. A jury may consider such evidence to determine a defendant's mental state at the time of the crime. *See Jackson v. Virginia*, 443 U.S. 307, 325 (1979). This Court agrees that having evidence of Matthews' mental state before and immediately after the crimes allows the jury a reasonable basis for inference about his mental state while committing the crime. This is logical, sensible and fair. If this were not true, then this jury could never find the absence of EED, because in this case, as in many others, no witnesses to the crime remain alive, other than Matthews himself.

### C.

No one disputes that Matthews presented some evidence of EED. No doubt, a person could look at this evidence and agree with it. But that evidence was not so compelling to require a jury to do so. Thus, after the close of the evidence, it was for the jury to decide whether

Matthews acted under the influence of EED. The cumulative effect of the evidence demonstrates that the trial court did not err when it denied Matthews' motion for a directed verdict and allowed the jury to do its duty.

To require the Commonwealth to introduce evidence of the absence of EED in its own case would be contrary to Kentucky law as it existed in 1982, or at any time after 1976. What is required is that at the conclusion of the evidence, a reasonable jury be able to find beyond a reasonable doubt the absence of EED. This Court concludes that substantial evidence in this case allowed reasonable jurors to do so. Thus, as a matter of evidence, the Kentucky Supreme Court correctly analyzed the sufficiency of the proof as submitted in the Matthews' trial. The Court finds no constitutional basis for disregarding the import of that evidence.

**IV**.

Petitioner's last argument is that Matthew's appellate counsel failed to argue that Kentucky change its law to require a definition of EED in the jury instructions. Had Matthews' appellate counsel argued for a change of Kentucky law, his current counsel postulates, he might have been successful. Thus, failure to do so, constitutes ineffective assistance of counsel. This conclusion depends upon the logic that had Matthews raised the issue, the Supreme Court of Kentucky would have changed its state law earlier than it actually did in *McClellan v. Commonwealth*, 715 S.W.2d 464 (Ky. 1986). The Kentucky Supreme Court declined the opportunity to change the law presented in other cases about the same time.[7] Regardless, this

---

[7]The Magistrate found the fact that other attorneys had raised the issue relevant in determining that the issue was "significantly obvious." However, this fact cuts both ways. It may make the issue of the lack of a definition of EED significantly obvious, but it also means the Kentucky Supreme Court had heard arguments regarding the issue and despite this did not require a definition of EED. Thus while the issue may be significantly obvious, it may be just as obvious that the Kentucky Supreme Court had no interest in changing the law.

Court disagrees that this is proper grounds for a writ of habeas corpus in these circumstances. The reasons for this rule are quite sound.

At the time Matthews argued his case on appeal, the Supreme Court of Kentucky did not require a definition of EED in trial instructions. *See Edmonds v. Commonwealth*, 586 S.W.2d at 27. Therefore, the Matthew's trial court's handling of the instructions was indisputably correct under then existing Kentucky law. In 1986, the Supreme Court reversed itself, holding that a definition was required. It did not make application of the new rule retroactive, however. *See Smith v. Commonwealth*, 734 S.W.2d 437, 449 (Ky. 1987).[8] Thus, the only route for Matthews to have been successful was if his case, rather than *McClellan,* had been the case that changed Kentucky law.

Appellate counsel is judged by the same effectiveness standard as trial counsel. *See Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986). For an ineffective assistance of counsel claim to succeed petitioner must show two things. First, "that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Court does not believe that appellate counsel can be said to have fallen below an objective standards of reasonableness because he decided against arguing an issue upon which Kentucky law had been settled or at least stable for seven years.[9] The Court can find no support

---

[8] Since the application of the definition of EED is prospective, it is not reversible error to fail to define EED prior to *McClellan* in 1986. *Id*.

[9] From a constitutional viewpoint, the precise state of certainty about Kentucky law should not be an issue. In fact, the law about definitions was clear, though some disagreed and some argued against it.

17

for the idea that counsel must foresee changes in the law and argue settled issues or open themselves to a claim of ineffective assistance. To hold otherwise would mean that for habeas corpus purposes every change in the law has a retroactive effective, regardless of state or federal holdings to the contrary. Thus petitioner fails to satisfy the first prong of the *Strickland* test.

For similar reasons, the Sixth Circuit has previously addressed an ineffective assistance of counsel claim where appellate counsel failed to anticipate a change in the law. *Lott v. Coyle*, 261 F.3d 594, 609 (6th Cir. 2001) (citing *Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986)). In *Lott*, the issue arose because it was unclear under Ohio law whether strict compliance, as opposed to substantial compliance, was required to execute a valid jury waiver. *Id*. Lott did not strictly comply with the waiver requirements. *Id.* at 606. Lott's attorney did not argue that strict compliance was necessary on appeal, but three years later the Ohio Supreme Court ruled that strict compliance was required. *Id.* at 609. The Sixth Circuit held that this was not ineffective assistance of counsel. *Id*.

In the *Lott* case, the law was confused, some Ohio courts required strict compliance while others did not. *Id.* In the instant case, however, Kentucky law was settled rather than confused. No EED definition was required in the jury instructions. *See Edmonds v. Commonwealth*, 586 S.W.2d at 27. If the failure to argue a confused point of law, which has precedent on both sides, does not qualify as ineffective assistance of counsel, then the failure to argue against a reasonably settled issue of law surely does not qualify.

Finally, it is not gross incompetence to fail to predict that the Kentucky Supreme Court might change its existing views. Looking at all of the ongoing cases at the time of Matthews' appeal, it is impossible to logically believe that reversal of the EED definition rule was

"reasonably probable." It is mere speculation to suggest that appellate counsel could have convinced Kentucky's highest court to act earlier than it actually did. Thus, Petitioner fails to meet the second prong of the *Strickland* test.

For all these reasons, this Court concludes that Matthews' former appellate counsel were not grossly incompetent when they neglected to argue for a change in Kentucky law.

V.

As to all other matters contained in the Magistrate's report and recommendation, this Court will adopt the analysis contained in the Magistrate's report and the conclusion that none are sufficient to justify issuance of a writ of habeas corpus.

The Court will enter an order consistent with this Memorandum Opinion.